UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. )<br>    DAMASO MERAS, )<br>    )<br>    Petitioner, )<br>    )<br>    v. )<br>    )<br>BRADLEY J. ROBERT,[1] Warden, )<br>Centralia Correctional Center, )<br>    )<br>    Respondent. )<br>    ) | No. 05 C 1289 |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

    Damaso Meras petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he received ineffective assistance of trial and appellate counsel in violation of his rights under the United States Constitution. Respondent Bradley J. Robert, Warden of the Centralia Correctional Center (the "State") responded on July 25, 2005, contending that each of Meras's claims is either procedurally defaulted or without merit. For the reasons set forth below, we deny Meras's Petition.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Court, this Court hereby substitutes Warden Bradley J. Robert, in lieu of Warden Robert Bensko, as Respondent in this case. Due to Petitioner's transfer to the Centralia Correctional Center, Robert is now Petitioner's custodian and is the proper party to be named as Respondent.

## BACKGROUND[2]

On February 16, 1994, following a bench trial in the Circuit Court of Cook County, Petitioner Damaso Meras was convicted of the June 12, 1990 beating death of Julian Sotelo and sentenced to 45 years in prison for first-degree murder. At trial, the State presented several witnesses, who testified that they saw Meras arguing with the victim minutes before the fatal attack. Meras did not offer evidence in his defense and did not testify at the trial.

Meras appealed his conviction to the Appellate Court of Illinois on several grounds, including that his defense counsel was ineffective because counsel (1) failed to adequately cross-examine two witnesses; (2) was ill-prepared to oppose introduction of a hearsay statement admitted under the excited utterance exception; (3) failed to argue for a second-degree murder conviction; and (4) included a new theory in a post-trial motion that had not been developed at trial.[3] After briefly examining each of Meras's claims, the appellate court affirmed the conviction.

On November 25, 1996, Meras filed a petition for leave to appeal with the Illinois Supreme Court arguing that the trial court erred in admitting alleged hearsay testimony, in which the victim identified Meras as an attacker. Meras's petition for leave to appeal did not include any other arguments previously raised to the appellate court, including the ineffective assistance of counsel claim. On January 29, 1997, the Illinois Supreme Court denied Meras's petition.

Meras next sought collateral review pursuant to the Illinois Post-Conviction Hearing Act.

---

[2] Our description of the facts is compiled from Meras's Petition, the record materials provided by the State as exhibits to its Answer, and the opinion of the Appellate Court of Illinois in *People v. Meras*, 284 Ill. App. 3d 157, 671 N.E. 2d 746 (Ill. App. 1996).

[3] We omit claims asserted on direct and/or post-conviction appeal that are not implicated by Meras's habeas Petition.

*See* 725 ILCS 5/122-1 *et seq.* On April 25, 1997, Meras filed a handwritten *pro se* Petition for Post-Conviction Relief in the Circuit Court of Cook County. In this post-conviction petition, he alleged that he received ineffective assistance of counsel where trial counsel: (1) failed to sufficiently impeach two witnesses; (2) failed to contact two defense witnesses Meras identified prior to trial; and (3) refused to allow Meras to testify at trial. Meras also alleged that appellate counsel was ineffective because, despite his insistence, she neglected to raise these same issues on direct appeal. In support of his petition, Meras attached affidavits from the two purported defense witnesses, Evanelina Nuñez (his cousin) and Nilda Gonzalez (a bar owner), both of whom allegedly would have testified that he was with them at Gonzalez's tavern at the time of the murder. Meras submitted his own affidavit describing the information he provided to his trial and appellate counsels about the potential witnesses and his desire to testify at trial.[4] With its motion to dismiss Meras's Petition for Post-Conviction Relief, the State submitted an affidavit from Michael Unger, Meras's trial counsel. In his affidavit, Unger stated that he advised Meras of his right to testify before and during trial. Unger further swore that "[a]fter being informed that he could have been cross-examined that he fled to Mexico and could have been impeached by his prior three convictions, the petitioner and I agreed that it was not advisable for him to testify." (Resp.'s Ans., Ex. F, Unger Aff. ¶ 2.)

On March 29, 2001, the circuit court heard argument on Meras's ineffective assistance claims relating to the two potential witnesses and the denial of his right to testify. The court ultimately rejected the argument that trial counsel had prohibited Meras from testifying but

---

[4]Although Meras alleged further mistakes committed by his trial and appellate counsels in an amended petition for post-conviction relief, those claims are not relevant to his current habeas Petition and we do not discuss them herein.

granted a hearing limited to his claim of ineffective assistance of counsel based on the failure to call defense witnesses. At the October 3, 2001 evidentiary hearing, Meras's aunt – the only defense witness presented – testified that she saw two unidentified young men leave the scene of the murder on a bicycle. Neither Nuñez, nor Gonzalez, testified at the hearing to develop Meras's alleged alibi. At the close of the hearing, the court denied Meras's remaining claims.

On December 11, 2003, Meras appealed the circuit court's order, alleging that the court erred in dismissing his claim regarding his fundamental right to testify without an evidentiary hearing. In a written opinion dated August 10, 2004, the appellate court affirmed the lower court's dismissal. Shortly thereafter, Meras filed a Petition for Leave to Appeal with the Illinois Supreme Court. Meras asserted that the appellate court misapprehended its role by engaging in a factual analysis of his ineffective assistance of counsel claim, rather than evaluating whether he made a substantial showing that the circuit court violated his rights by denying him an evidentiary hearing. The supreme court denied the Petition for Leave to Appeal on November 24, 2004.

On March 3, 2005, Meras filed this Petition for a writ of habeas corpus. Meras claims that he was denied effective assistance of trial counsel because his attorney refused to allow him to testify and failed to contact and produce known defense witnesses. Meras also contends that his appellate counsel failed to present these constitutional violations on appeal.[5]

---

[5]Meras also claims that the State failed to comply with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts by neglecting to describe what state court transcripts are available, when they can be provided, or what proceedings were recorded but not transcribed. (Reply at 1-2.) Rule 5 directs the respondent to submit relevant materials, including transcripts, to the district court. The Seventh Circuit has held that a district court, in its sound discretion, may decide what transcripts are necessary for collateral review. *See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004). We note that the State in this case provided

4

DISCUSSION

A.     *Procedural Prerequisites*

Before we may review the merits of his habeas Petition, Meras must both: "(1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default." *Bocian v. Godinez,* 101 F.3d 465, 468 (7th Cir. 1996) (citations omitted); *see also* 28 U.S.C. § 2254(c)*; Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998); *Momient-El v. DeTella*, 118 F.3d 535, 538 (7th Cir. 1997). These requirements ensure that Illinois will have the first chance to review and correct any alleged violations of its prisoners' federal constitutional rights. *See Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004); *McGowan v. Miller,* 109 F.3d 1168, 1172 (7th Cir. 1997).

Meras will be deemed to have exhausted his state court remedies if he has given the highest court in the state "a fair opportunity to consider the constitutional issue" presented, or if he has "no further available means for pursuing review of his conviction in state court." *Wallace v. Duckworth,* 778 F.2d 1215, 1219 (7th Cir. 1985); *see* 28 U.S.C. § 2254(b)(1)(A). "Where state remedies remain available to a habeas petitioner who has not fairly presented his claim to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim." *Perruquet*, 390 F.3d at 514. As the United States Supreme Court held in *O'Sullivan v. Boerckel*, petitioners convicted under Illinois law generally must present their claims to both an intermediate appellate court and to the Illinois Supreme Court. 526 U.S. 838, 843-846 (1999). The parties apparently agree that no avenues remain open for Meras to present his claims, and

---

available briefs and transcripts from the underlying state court proceedings, as it deemed relevant. This Court finds that consideration of Meras's Petition can proceed with the record materials already provided by the parties.

5

we similarly conclude that he has exhausted his state court remedies.

Like the exhaustion doctrine, the procedural default doctrine "is grounded in principles of comity, federalism, and judicial efficiency." *Perruquet*, 390 F.3d at 514. Procedural default occurs when a petitioner fails to fairly present a federal constitutional issue to the state courts on direct or post-conviction review, or when a state court rejects a claim on an independent and adequate state law ground. *Id.; see Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991). In other words, and as relevant here, "a habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). To fairly present a constitutional claim to the state courts, a petitioner must articulate both the operative facts and controlling legal principles supporting his claim. *Picard v. Connor*, 404 U.S. 270, 277, 92 S.Ct. 509 (1971); *see Perruquet*, 390 F.3d at 519. In short, Meras must demonstrate that the questions presented here are the same questions posed earlier to the Illinois courts. *See Boyko v. Parke*, 259 F.3d 781, 789 (7th Cir. 2001); *Hampton v. Liebach*, 290 F. Supp. 2d 905, 918 (N.D. Ill. 2001).

Turning to Meras's allegation that trial counsel was ineffective by denying him the right to testify, we conclude that this claim is properly before us.[6] Meras apparently did not present

---

[6]Meras asserts that his ineffective assistance of counsel claim – despite its various permutations throughout the state court appellate and post-conviction proceedings – cannot be dissected into discreet arguments now to evaluate whether he procedurally defaulted any aspect of this "one claim." (Reply at 2.) Meras is indeed correct that habeas corpus petitioners may "reformulate" a claim "as long as the substance of the argument remains the same." *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001); *see Picard*, 404 U.S. at 277-278. Here, however, Meras's overarching "ineffective assistance of counsel" theme truly consists of several substantively different arguments, rather than "reformulations" of a single claim. For example, Meras's argument that appellate counsel failed to argue the ineffective assistance of trial counsel

this argument on direct appeal to the Illinois state courts. Nonetheless, he included it in his Petition for Post-Conviction Relief, describing the factual predicate to this claim and citing to appropriate authorities, including the seminal case governing claims of ineffective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Further, Meras pressed this issue throughout the appellate proceedings. This particular argument is the basis of his appeal from dismissal of the post-conviction petition and the resulting Petition for Leave to Appeal.[7] In affirming the circuit court's dismissal, the appellate court explicitly addressed Meras's allegation that counsel prohibited him from testifying, and engaged in the *Strickland* analysis. Because Meras afforded the Illinois courts a meaningful opportunity to hear this constitutional complaint, we may consider its merits in evaluating his Petition.

---

is, when boiled down, unrelated to the independent argument that trial counsel was ineffective. *See Lewis*, 390 F.3d at 1028-1032 (individually analyzing procedural default of petitioner's numerous claims against counsel); *Raygoza v. Bohler*, 361 F. Supp. 2d 779, 786-796 (N.D. Ill. 2005) (same); *Redding v. Godinez*, 900 F. Supp. 945, 949-951 (N.D. Ill. 1995) (same); *see also Lucas v. Wellborn*, 89 F. Supp. 2d 976, 979-982 (N.D. Ill. 1999) (individually evaluating default of petitioner's claims of ineffective assistance of trial and appellate counsel). "It is not sufficient that [petitioner] alleged various other errors by counsel; to set forth a claim . . . a petitioner must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance." *Momient-El*, 118 F.3d at 541 (internal quotations omitted); *see also Chambers*, 264 F.3d at 738 ("Mere similarity of claims is insufficient to exhaust."). Thus, Meras cannot clear the default hurdle by asserting that he generically complained of "ineffective assistance of counsel" to the state courts.

[7]We note that Meras's briefing before the appellate and supreme courts primarily focused on whether the circuit court erred in denying him an evidentiary hearing on this ineffective assistance of counsel issue. As those briefs referred to *Strickland* (if only in passing) and consistently averred that Meras was denied his right to testify due to counsel's incompetence, we believe they put the Illinois courts on notice of a potential constitutional violation. In addition, the State does not suggest that Meras procedurally defaulted this claim and thus, it has waived any such argument. *See Perruquet*, 390 F.3d at 516 (noting that a state implicitly waived the affirmative defense of procedural default where it responded to one claim on the merits while asserting that another was procedurally barred); *Pisciotti v. Washington*, 143 F.3d 296, 300-301 (7th Cir. 1998) (holding that the government's failure to raise any procedural default argument waived the defense).

With respect to his ineffective assistance claim based on appellate counsel's alleged faults, we hold that Meras did not fairly present this claim to the Illinois courts. Because Meras's appellate counsel also represented him when seeking leave to appeal his conviction to the Illinois Supreme Court, he understandably did not raise this claim during those proceedings. Meras initially raised this argument in his Petition for Post-Conviction Relief. Meras, however, omitted this claim from the appeal of the dismissal of his post-conviction petition. Nor did he include this particular claim in his Petition for Leave to Appeal filed with the Illinois Supreme Court. This "failure to appeal the dismissal of an issue raised in a post-conviction petition in Illinois state court" constitutes procedural default and bars further review by this Court. *Boerckel*, 526 U.S. at 839.

Meras similarly failed to pursue the claim that his trial counsel neglected to contact Nuñez and Gonzalez as defense witnesses. Though he identified several of counsel's alleged mistakes in his direct appeal, this error was not among them. Moreover, while Meras included this claim in his Petition for Post-Conviction Relief, he did not advance it in the subsequent appeals to the Illinois Appellate and Supreme Courts. Accordingly, Meras procedurally defaulted this claim.[8]

Procedural default may be excused if a petitioner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. As to

---

[8]To the extent that Meras's Petition could be construed to include a claim that his right to testify was violated – independent of his ineffective assistance claim – we would be barred from considering that claim. Although the State's Answer suggests that Meras raised this issue, (Ans. at 12-13), he has never presented any such claim to the Illinois state courts and has procedurally defaulted this argument.

the "cause-and-prejudice" exception, ineffective assistance of counsel may constitute a "cause" for procedural default, if the petitioner also presented the state courts with an independent claim of *that* ineffective assistance. *See Edwards v. Carpenter*, 529 U.S. 446, 451-453, 120 S.Ct. 1587 (2000)*; Murray v. Carrier*, 477 U.S. 478, 488-489, 106 S.Ct. 2639 (1986). In establishing "prejudice," a habeas petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584 (1982); *see also Perruquet*, 390 F.3d at 515. The "fundamental miscarriage of justice" exception is "narrow" and limited to "extraordinary" cases where the petitioner is actually innocent, and not merely legally innocent, of the crime of conviction. *Steward v. Gilmore,* 80 F.3d 1205, 1212 (7th Cir. 1996); *Lemons v. O'Sullivan,* 54 F.3d 357, 361 n.3 (7th Cir. 1995) (citing *Carrier,* 477 U.S. at 496). "To prove actual innocence the petitioner must come forward with 'new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Raygoza*, 361 F. Supp. 2d at 788 (quoting *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851 (1995)). In addition, the petitioner must prove that it is more likely than not that "no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327; *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.").

      Meras does not contend that either of these exceptions applies, nor does the Court believe

that either could excuse his default. Meras's Petition identifies no external cause for, or prejudice resulting from, his failure to appeal the two defaulted claims to the Illinois Supreme Court. Even if he had identified any particular prejudice, he could not use the alleged ineffective assistance of appellate counsel as cause to excuse the default of his claim challenging trial counsel's failure to call witnesses, because the claim as to appellate counsel is *itself* defaulted. *See Edwards*, 529 U.S. at 451-453. While Meras does not articulate the "fundamental miscarriage of justice" exception, we observe that he claims to be actually innocent. (Pet. at 2.) Nonetheless, he offers no new evidence at this stage to support this assertion. The little evidence he presented to the Illinois courts supporting his innocence – affidavits from family members and one tavern owner – hardly amounts to "powerful evidence" sufficient to prove that no reasonable juror could have convicted him. *See Hayes*, 403 F.3d at 938. Because Meras has not offered such convincing evidence, he cannot avail himself of this exception. *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup* 513 U.S. at 327).

B. *Ineffective Assistance of Trial Counsel: Failure to Allow Meras to Testify*

Under the Antiterrorism and Effective Death Penalty Act, this Court may grant Meras's request for habeas relief with respect to any claim decided on the merits by the state court only if the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-405, 120 S.Ct. 1495 (2000). A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme

10

Court precedent and arrives at a result opposite to [it]." *Williams,* 529 U.S. at 405.

A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively" unreasonable. *Id.* at 410 ("An *unreasonable* application of federal law is different from an *incorrect* application.") ( emphasis in original); *see Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1 (2003) (same). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Henderson v. Briley*, 354 F.3d 907, 909 (7th Cir. 2004) (The "question before a federal court on collateral review . . . is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable.'").

Thus, the question raised by Meras is whether the Illinois appellate court unreasonably applied the principles set forth in *Strickland v. Washington* in dismissing his claim that trial counsel was ineffective, in violation of his Sixth Amendment rights, by forbidding him from testifying.[9] *Strickland*, 466 U.S. 668. To obtain relief based on an ineffective assistance of

---

[9]In reviewing Meras's remaining ineffective assistance of counsel claim, we note that his Petition never articulates precisely how the Illinois appellate court's conclusion on the merits of his post-conviction appeal involved an unreasonable application of *Strickland*. Giving him the benefit of the doubt, however, we will broadly read his *pro se* Petition and consider its merits.

11

counsel claim, a petitioner must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687-88. Under the "performance prong," a petitioner must demonstrate that, in light of all the circumstances, counsel's acts or omissions fell "outside the wide range of professionally competent assistance." *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir. 1995). This standard is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). To satisfy the "prejudice prong," a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Indeed:

> [if] a state court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim . . . [,] the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself.

*Williams,* 529 U.S. at 406.

Here, as he did before the Illinois appellate court, Meras asserts that his trial counsel refused to permit him to take the stand in his own defense. In its August 10, 2004 opinion, the appellate court considered the evidence presented to the circuit court on this issue, including the "dueling" affidavits submitted by Meras and his trial counsel. The appellate court cited *Strickland* and utilized its two-prong test, ultimately concluding that Meras failed to satisfy the prejudice requirement. The court found that Meras could not show any prejudice in light of the other evidence offered at trial placing him at the scene of the murder.

We hold that the Illinois appellate court's determination was not an unreasonable

12

application of *Strickland.* First, Meras failed to show that his trial counsel's performance was objectively unreasonable. His self-serving affidavit is insufficient to demonstrate that trial counsel refused to allow him to testify. *Underwood v. Clark*, 939 F.3d 473, 475-476 (7th Cir. 1991) (holding that "in a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand"). Meras's affidavit is particularly suspect given his trial counsel's contradictory affidavit, in which Unger stated that he advised Meras of his right to testify. Unger further stated that he and Meras agreed that Meras would not testify because he could face impeachment on his prior convictions and flight to Mexico. We cannot find that Unger was ineffective for advising Meras, as a matter of strategy, not to testify under such circumstances. *See Rodriguez v. United States*, 286 F.3d 972, 983-984 (7th Cir. 2002). Even if, as Meras claims, Unger's reason for encouraging him not to testify was that the State had insufficient evidence to convict him, such a decision also falls within the bounds of reasonable representation. *See Rogers-Bey v. Lane,* 896 F.2d 279, 283 (7th Cir. 1990)*, abrogation on other grounds recognized by Willis v. Aiken,* 8 F.3d 556, 563 (7th Cir. 1993).

Second, and as explicitly held by the appellate court, Meras did not demonstrate that the outcome of his trial would have been different had counsel permitted him to testify. The State presented several witnesses placing Meras at the very spot where Sotelo was beaten, and arguing with him minutes before the attack took place. In addition, the State introduced the victim's statement that Meras was one of his attackers. Meras presumably would have testified that he was not at the scene of the crime. Without more, however, Meras has failed to prove that any

prejudice resulted from counsel's alleged refusal to call him to testify. Accordingly, Meras is not entitled to habeas relief.

*CONCLUSION*

For the foregoing reasons, Meras's Petition for a writ of habeas corpus is denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 9/30/05